AMERICAN SAMOA GOVERNMENT

v.

PIO TAUASOSI, Defendant

High Court of American Samoa
Trial Division

CR. NO. 25-86

October 20, 1986

Before REES, Chief Justice, and VAIVAO, Associate Judge.

Counsel: For the Government, Tauivi Tuinei,
Assistant Attorney General
For the Defendant, Michael Bennett,
Assistant Public Defender

Defendant was charged with one count of murder in the second degree and two counts of assault in the first degree. The government alleged that during a dispute between defendant's family and a neighboring family in the village of Amaluia, the defendant had fired a shotgun at a group of boys, killing Taesale Nelson and injuring two others.

At trial there were two issues: whether defendant actually fired the fatal shot and whether he did so under the influence of an extreme mental or emotional disturbance such as would reduce the crime to manslaughter.

Defendant had confessed to firing a shotgun at some person or persons whom he believed to have set a fire in an unoccupied house owned by his father. The part of his statement admitted into evidence did not indicate, however, whether his shot actually hit anyone. The person or persons at whom he fired were standing by a mango tree near the house, which is where the two surviving boys testified they had been standing. One of the people at whom the defendant shot had thrown something at the house; one of the injured boys admitted having thrown rocks at the house, ostensibly in an attempt to put out the fire.

No witness, however, definitely identified the defendant as having fired the fatal shot. There was some testimony (albeit vague and of uncertain reliability) concerning another gun and perhaps other shots at Amaluia that night. Nor was there any ballistics evidence establishing whether defendant's shotgun was the murder weapon; unlike a rifle bullet, a pellet fired from a shotgun does not yield its source upon expert examination, and it is not clear whether other tests would have been helpful.

At the conclusion of the evidence, both judges were strongly of the opinion that the shot fired by the defendant was the same one that killed Sale Nelson and injured the two other boys. We did not, however, believe that the evidence established this beyond a reasonable doubt. We were therefore bound to acquit the defendant of murder.

The Court did find, however, that the defendant fired at someone. We rejected defense counsel's contention that a defendant's belief that someone has set fire to a vacant building constitutes an "extreme mental or emotional disturbance for which there is a reasonable explanation or excuse" sufficient to convert murder into manslaughter. Noting the well-established presumption that one who fires a gun at someone intends to kill him, the Court therefore found defendant guilty of assault in the first degree. The Court based this verdict on A.S.C.A. § 46.3520(a)(2) ("A person commits assault in the 1st degree if . . . he attempts to kill or to cause serious physical injury to another person.").

Since the evidence did not establish beyond a reasonable doubt either that the defendant had intended to shoot more than one person or that he actually did shoot more than one person, he was acquitted of the two second-degree assault counts.

Several days after the verdict had been rendered, defense counsel moved for arrest of the judgment. The basis for this motion was that the Court had convicted the defendant of a crime with which he was never charged.

It is true that the information on which the defendant's conviction was based charged only second degree murder. The defense concedes, however, as it clearly must, that if first degree assault is an offense included within the crime charged in the information, the conviction is valid. A.S.C.A. § 46.3108. The defendant was convicted of first degree assault on the ground that he attempted to kill someone, and an attempt to commit a crime is always an offense included within that crime. A.S.C.A. § 46.3108(3). The defense argues, however, that defendant was charged only with a particular kind of second degree murder, and that the offense of first degree assault is not included within this kind of murder.

68

The operative language in the information is as follows:

> The above named defendant is charged with the crime of Murder in the Second Degree in that on or about April 12, 1986, at or around 11:00 p.m., at or near Amaluia, American Samoa, he recklessly engaged in conduct which create (sic) a grave risk of death and thereby causes the death of another person, to wit: defendant fired a shotgun toward certain people at night causing the death of Taesale Nelson in violation of A.S.C.A. 46.3503; Murder in the Second Degree; A Class A felony; Maximum penalty - Life Imprisonment.

The defendant's contention is based on the inclusion of the word "recklessly" in the information: Since he was charged not with intentional murder but with mere recklessness, an attempt cannot be included within the charge. There is no such thing as attempted recklessness, since an attempt requires intent whereas recklessness implies something less than intent.

Before addressing defendant's argument it is necessary to clarify the standards against which the information must be judged. There are many thousands of reported cases from other jurisdictions concerning the sufficiency of indictments and informations. Many of these cases take an extremely narrow view of the power of courts to construe such documents. These decisions seem to have been motivated by three principal concerns:

(1) The need for a defendant to have adequate notice of the nature of the charge against him in order to prepare his defense;

(2) Regard for the separation of powers between grand juries, which have the sole power to indict, and courts, which must take indictments as they find them;

(3) A vestigial English common law attitude toward documents used to commence legal proceedings. Prior to the reforms instituted in most United States jurisdictions within the last hundred years, failure to plead properly was fatal to a civil or criminal action even when the failure was purely technical and everyone knew the intended

69

meaning of the pleadings. Even after the attempted legislative repeal of this situation, some courts have continued to apply hypertechnical rules of pleading to criminal indictments.

We in American Samoa need be concerned only with the first principle.[1] Indictment by a grand jury is not required by law; rather, A.S.C.A. § 46.1220 provides that felonies shall be initiated by criminal information. Moreover, the Territorial Court Rules of Criminal Procedure make it clear that the information need not comply with traditional common law standards so long as it includes a "plain, concise and definite written statement of the essential facts constituting the offense charged." TCRCrP Rule 7. Cf. Hagner v. United States, 285 U.S. 427, 431 (1932) ("The rigor of old common law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded.") This standard is essentially the same as that imposed by the Sixth Amendment to the United States Constitution, which guarantees the accused the right "to be informed of the nature and cause of the accusation."

We believe that the test imposed by the Constitution and by Rule 7 --- that the information state the essential facts in a way that gives the defendant fair notice of what he is being charged with --- was met in this case.

The information stated that defendant "fired a shotgun toward certain people at night causing the death of Taesale Nelson." Standing alone, this language would have been enough to support a conviction for intentional second degree murder. It is well established that a trier of fact is justified in finding, from the fact that the defendant has fired a gun at someone, that he

---

[1] Another reason often cited by courts for requiring precision in indictments is to ensure that both the government and the defendant know for which other crimes the defendant might be prosecuted without exposing him to double jeopardy. Although this has not been an issue in the present case, we do note that in the case principally relied on by the defendant, the court overturned a felony murder conviction based on a first-degree murder indictment, but allowed the defendant to be re-tried on the felony murder charge. Watson v. Jago, 558 F.2d 330 (1977).

intended to kill that person. See, e.g., Morgan v. State, 242 A.2d 831 (Md. App. 1968); Young v. State, 384 S.W.2d 710 (Tex. App. 1964); State v. Leedom, 76 N.W.2d 773 (Iowa 1956); State v. Buchanan, 252 P.2d 524 (Idaho 1953). The absence of the word "intentionally" in the description of the defendant's act, therefore, does not affect its validity or its meaning. An indictment or information "must be read to include facts which are necessarily implied by the specific allegations made." United States v. Silverman, 430 F.2d 106, 111 (2d Cir. 1970), cert. denied, 402 U.S. 953 (1971). Thus, for instance, the failure of an indictment to charge that an act was done "willfully" is no bar to conviction of a crime of which willfulness is one of the elements, provided that willfulness is implicit in the allegations set forth. Phelps v. State, 439 So.2d 733 (Ala. App. 1983), and cases cited therein; Rumely v. United States, 293 F. 532 (2d Cir.) cert. denied, 263 U.S. 713 (1923), and cases cited therein. Similarly, an indictment charging the defendant with seizing and abducting someone is not invalid for omitting the word "knowingly," since the act of seizing and abduction implies knowledge. United States v. Martell, 335 F.2d 764 (4th Circ. 1964). See also Hagner v. United States, supra (since the law presumes that a letter posted in a mailbox is delivered to its destination, an allegation in an indictment that a letter was posted is deemed to allege actual delivery).

The information concluded that the defendant had killed Taesale Nelson "in violation of A.S.C.A. 46.3503," without specifying any particular subsection of that statute. Thus both the statement of facts and the statutory reference gave defendant fair notice to be prepared to defend himself against second degree murder --- not only against "reckless" second degree murder, as defined in A.S.C.A. § 46.3503(3), but also against "intentional" second degree murder (A.S.C.A. § 46.3503(1)), and "knowing" second degree murder (A.S.C.A. § 46.3503(2)). The inclusion in another clause of the information, outside the statement of facts, of a conclusion of law --- that the stated conduct had been reckless --- was mere surplusage which the Court would have ordered stricken from the information had this been requested at any time before or during trial. See TCRCrp Rule 7(d).

Our holding might be different if we believed that the defendant had actually been misled by the inclusion of the word "recklessly" in the

71

information. The whole course of the proceeding from the arrest of the defendant through the closing arguments of counsel, however, is rife with indications that defendant was on notice to defend (and seems actually to have defended) against intentional second degree murder:

--- The primary evidentiary basis for the information was defendant's own statement that, upon seeing some people throwing things at a vacant house occupied by his father, he had taken his gun, aimed it at them, and fired. Defendant and his counsel were at all times aware of this statement and of the prosecution's heavy reliance on it.

--- The information itself, in two other counts charging defendant with assault upon the two victims who did not die, stated that defendant "causes or attempts to cause physical injury." (Emphasis added.) This phrase, another bit of boilerplate which was unnecessary to the indictment, was used in reference to the very same shotgun blast that was the basis for the count on which defendant was convicted. To the exact extent that defense counsel was paying any attention to the irrelevant legal conclusions peppered throughout the indictment, he should have been prepared to defend against a charge that the gun was fired at the victims intentionally rather than recklessly. (While these counts refer to an attempt to injure rather than to kill, they negate any inference that the government was limiting itself to a theory that the shot was fired randomly rather than directly at the people. In the absence of such an inference, the intent to kill may be inferred from the firing of a deadly weapon at the victims. See, e.g. Morgan v. State, supra; Young v. State, supra; State v. Leedom, supra; State v. Buchanan, supra.)

--- The references to the defendant's act in the brief opening statements of counsel suggest that one of the points at issue was whether defendant intended to hit the people he shot at. The prosecutor referred to the defendant's confession "that he was the one that shot these three boys," whereas defense counsel stated that defendant had "kept control of his anger until he saw a fire burning in his father's home on the same property, and that's when he became extremely disturbed by what happened and that's when in his anger he took the shotgun and came to the place where his father's home was burning and observed

72

some figures . . . and that's when he fired a shot in that general direction."

--- When the police officer who had taken the defendant's statement was reading it into evidence, the defense counsel objected to the translation of the Samoan word "ta'i" as "aim" suggesting that instead the word should be translated as "point." The principal effect and apparent purpose of this objection, which the Court and both counsel took seriously enough to discuss for several minutes, was to suggest that the defendant may have fired his gun without intending to hit anyone. (Although whether the defendant was trying to hit anyone is indirectly relevant to whether he succeeded, this dispute was far more directly relevant to the question of intent.)

--- In the prosecutor's closing statement he read all three subsections of A.S.C.A. § 46.3503 and attempted to show that the defendant was guilty of second degree murder under each subsection--- intentional, knowing, and reckless.[2] Defense counsel did not object at that time to this unmistakable attempt to persuade the court to convict the defendant of a crime with which it now contends he was never charged. Nor did defense counsel even refer in his closing statement to the prosecution's attempt to effect what he now contends was an impermissible expansion of the indictment. Instead, he took issue on the merits with the prosecutor's contention that his client had aimed the gun at Taesale Nelson rather than merely firing in a general direction.[3]

_____

[2] The Prosecutor's argument included the following statement with reference to intentional murder:

> Murder in the second degree reads as follows: A person commits the crime of murder in the second degree if one, he intentionally causes death of another person. The defendant here intentionally caused the death of that other person, Nelson. He knew these people were standing there. It was lighted. He came out there and he shot them intentionally.

[3] The public defender emphasized this point both in his discussion of causation and in his discussion of the defendant's state of mind. In

73

--- In his rebuttal statement the prosecutor found it necessary to respond to these statements by defense counsel, citing two cases to the effect that a person who fires a gun at someone is presumed to intend the natural consequences of his act. Once again defense counsel failed to object.

The conclusion we draw from this sequence of events is that the defense, like the prosecution and both judges, was proceeding on the assumption that the defendant had been charged with intending the foreseeable consequences of his actions. Since defense counsel's principal preoccupation was understandably with defending against a murder charge, and since either a finding of reckless or of intentional killing would have sustained such a charge, the distinction was obviously not one which the defense emphasized. But counsel made the point, and made it repeatedly.

The alternative conclusion --- that the defense always regarded the word "recklessly" as an essential limiting term in the indictment, but withheld its objection to the prosecutor's contrary statements until after trial, and even drew the Court into a controversy over the deliberateness of the defendant's action --- would justify a holding that the right to object to any variance between the information and the conviction had been waived. See, e.g., Odom v. State, 375 So. 2d 1079 (1979 Fla. App.), in which the defense waived a variance between the indictment and the conviction by not objecting to jury instructions on a crime not included within the offense charged in the indictment. If this had been a jury trial, the Court would have instructed the jury on first degree assault as a lesser included offense of second degree murder, and a failure to object would have been a waiver. In this case the equivalent stage of the proceedings was the closing argument, in which each counsel had a chance to argue the law to the judges before they conferred on a verdict.[*]

---

discussing state of mind, counsel reiterated his earlier assertion that the defendant "didn't shoot the gun at Nelson."

[*] Defense counsel's citation of Watson v. Jago, 558 F.2d 330 (6th Cir. 1977), is inapposite. That case, although it held that a constructive amendment of the indictment from intentional murder to felony murder prejudiced the defendant and

therefore denied him due process of law, rested squarely on a point of Ohio state law. The Ohio Supreme Court had held that intentional murder and felony murder, although described in the same statute, were two different crimes. Thus _Watson_ was distinguished in its own circuit in _Blake v. Morford_, 563 F.2d 248 (6th Cir. 1977), on the ground that the Tennessee state courts continued to follow the common law tradition in which "there was but one kind of murder." _Id._ at 251.

It is instructive to note that the indictment upheld by the Sixth Circuit in _Blake_ was a good deal less informative than the information in this case. It made no mention at all of the charge that the murder had been committed in the course of another felony, yet the court held that the "common law form" indictment for murder --- alleging that the defendant "did unlawfully, feloniously, wilfully, deliberately, premeditatively, and of malice aforethought kill and murder" the victim--- was sufficient to charge felony murder.

In contrast to the Ohio statute at issue in _Watson_, A.S.C.A. § 46.3503 does not describe three different crimes, but one crime for which proof of any of several states of mind greater than mere negligence but less than "with deliberation" will suffice. Indeed, the inclusion of "reckless disregard for human life" as a mental element sufficient to prove second degree murder seems to have incorporated the reasoning of cases holding that proof of reckless disregard for human life was conclusive _evidence_ of an intention to kill. _See, e.g._, _People v. Carter_, _supra_. These cases, in turn, were attempts to deal with the problem that defendants rarely admit to having intended to kill their victims. The circumstantial evidence surrounding any killing which was neither merely negligent nor apparently committed "with deliberation" will invariably leave some doubt about whether the defendant actively desired the death of his victim. The decision of the Fono to prescribe an identical penalty for second degree murder regardless of what state of mind is proven suggests that it was attempting to deal with this evidentiary problem rather than to define three different crimes. In any case, however, we stress that the defendant here, unlike the defendant in _Watson_, was put on notice by the information that he could be convicted of intentional second degree

75

The prosecution explicitly and unequivocally argued that the defendant should be found guilty of intentional murder, and the defense responded by contesting the charge on the merits rather than by asserting its inconsistency with the information.

Our observations are in no way inconsistent with the public defender's post-judgment affidavit to the effect that "if this case had been tried under the Assault in the First Degree section . . . my advice would have been to the defendant that he testify on his own behalf in order to have confronted the mental element."[5] For under no imaginable circumstances could the government have been bound to try the defendant only on the assault charge. If the information had used the word "intentional" to describe the alleged murder, the crime of assault in the first degree would quite clearly have been a lesser included offense. Yet defense counsel would then have faced the very dilemma he did face at the trial: in the words of counsel's own affidavit, the government would still have "needed to prove that defendant did indeed cause the death," and counsel would presumably have been reluctant to risk the possibility that defendant's testimony would resolve the Court's doubts on this question.

In conclusion, we deny this motion because we believe the wording of the information did not prevent defendant from receiving a fair trial. (A trial, it will be recalled, in which he was acquitted of murder despite the belief of both judges that he had been proven guilty by a strong preponderance of the evidence although not beyond a reasonable doubt.) To decide that a defendant charged and proven to have fired a shotgun at people can be convicted of no felony at all unless he is found beyond a reasonable doubt to have hit his target, would be to attribute either to the

---

murder.

[5] We do note, however, that in light of the many reasons a defense counsel may have to keep his client off the stand, and in light of the impossibility of hypothesizing the reactions of the prosecution and the Court itself to such testimony by the defendant had it occurred, the Court must attach little weight to such after-the-fact statement. This is particularly true where, as here, the difficulty might have been avoided or mitigated by a timely motion or objection.

Fono or to the United States Constitution an absurd intention. We choose instead to "follow the admonition of Sir Matthew Hale and Lord Ellenborough . . . when they say that, 'if the sense be clear, nice exceptions ought not to be regarded,' . . . nor 'an overeasy ear be given to exceptions whereby more offenders escape than by their own innocence, to the shame of the government, to the encouragement of villany, and to the dishonor of God.'" United States v. Howard, 132 F. 325, 333 (W.D. Tenn. 1904).

The motion in arrest of judgment is denied.